**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MICHAEL A. SHIPP**<br>**UNITED STATES MAGISTRATE JUDGE** | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.   ROOM 2042<br>NEWARK, NJ 07102<br>973-645-3827 |

**Not for Publication**

LETTER OPINION AND ORDER

August 3, 2009

**VIA CM/ECF**
All counsel of record

    Re:    Salvagno v. Borough of Glen Ridge, et al.
              Civil Action No. 08-2992 (FSH) (MAS)

Dear Counsel:

This matter comes before the Court by way of Defendants' Motion to Compel Responses to Deposition Questions and Document Requests.[1]  For the reasons set forth below, the Defendants' motion is GRANTED.

**I.**    **Background**

Daniel Weiss ("Weiss") is a licensed and bonded private investigator retained by Plaintiff's counsel Richard Rinaldo ("Rinaldo") in the course of preparing for this litigation.  Weiss was tasked with procuring "from Plaintiff's co-workers voluntary sworn statements describing any of the

---

[1] The moving papers include two docket numbers.  First, Docket Number 27 - June 2, 2009 letter from Ronald A. Berutti on behalf of Defendant Borough of Glen Ridge regarding application to compel deposition answers by Daniel Weiss.  Second, Docket Number 30, entitled "joint motion to compel responses to deposition questions and document requests."  The document was submitted on behalf of Defendant Jay Weisenbach and joined in the relief requested by Mr. Berutti in his June 2, 2009 letter.

incidents of harassment of the Plaintiff that they had witnessed." (Pl.'s Opp'n Br. 2.) In the course of preparing Weiss for the questioning and determining which parties' statements should be procured, Rinaldo avers that he conveyed to Weiss various factual circumstances of the Plaintiff's case as well as what Rinaldo considered to be the "strengths and weaknesses" of the Plaintiff's case. (Pl.'s Certification 2.) During a deposition of Weiss that took place on May 27, 2009, Plaintiff's counsel Mitchell Kastner ("Kastner") objected to several questions that were asked of Weiss by Defendant's counsel Ronald Berutti ("Berutti"). Plaintiff objected to questions covering conversations and interactions that took place between Weiss and plaintiff Anthony Salvagno ("Salvagno"). Plaintiff asserts that the conversations between Weiss and Salvagno are protected by the Attorney-Client privilege. (Pl.'s Opp'n Br. 8). Plaintiff asserts that the conversations between Weiss and Rinaldo are protected by opinion work-product protections. Defendant conceded that point during the June 19, 2009 status conference.

## II.  Analysis - Attorney-Client Privilege

The Supreme Court, in *Upjohn Co. et al. v. United States et al.*, 449 U.S. 383, 389 (1981), stated that "[t]he attorney client privilege is the oldest of the privileges for confidential communications known to the common law." The Court further reiterated the common-law maxim that the privilege extends only to communications but not the facts underlying the privileged communications. *Id.* at 395-96. The purpose of the privilege is "to encourage clients to make full disclosure to their attorneys." *Id.* at 389 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). The privilege only applies to communications made in confidence to a party's lawyer for the purpose of obtaining legal advice from the lawyer. *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961). In a broader vein, "[t]he attorney-client privilege insulates from disclosure a discrete category of

communications between attorney, client, and in some instances, *third parties* that assist the attorney to formulate and render legal advice." *HPD Laboratories, Inc. v. Clorox Co.*, 202 F.R.D. 410, 414 (D.N.J. 2001) (emphasis added). Yet, "voluntary disclosure to [an unrelated] third party of purportedly privileged communications has long been considered inconsistent with an assertion of the privilege." *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1424 (3d Cir. 1991). Finally, "[b]ecause the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Id.* at 1423.

In the instant case, the Court must determine whether the attorney-client privilege which existed between Mr. Salvagno and Mr. Rinaldo transferred to and protected the litigation-related communications between Mr. Salvagno and Mr. Weiss. The "complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others. . . . [T]he privilege must include all the persons who act as the attorney's agents." *Kovel*, 296 F.2d at 921. However, "nothing in the policy of the privilege suggests that attorneys, simply by placing accountants, scientists or investigators on their payrolls and maintaining them in their offices, should be able to invest all communications by clients to such persons with a privilege the law has not seen fit to extend when the latter are operating under their own steam." *Id.* Critical in any extension of the attorney-client privilege to a non-party employed by an attorney is that the communication between the attorney's agent and the client be made in confidence and furtherance of "obtaining legal advice from the lawyer." *Id.* at 922.

Therefore, before any examination of whether the attorney-client privilege extended to the questions objected to during the Weiss deposition can take place, Weiss's status as Rinaldo's agent must be determined. According to *Kovel*, the extension of privilege is not limited to "menial or

3

ministerial" employees, and can extend to professionals. In *Kovel*, the privilege was deemed to extend to an accountant assisting the client's attorney in communicating with his client regarding complicated tax litigation with the goal that the attorney could more readily proffer sound legal advice. *Id.* at 922. The *Kovel* court likened the activity of the accountant to that of a translator performing a function integral to the attorney-client relationship and the rendering of legal advice. *Id.* The court stated that if the communications between the client and the accountant had been undertaken by the client before he had begun his relationship with the attorney, then the communications would not have been privileged. *Id.* Further, "if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *Id.*

While the Third Circuit has adopted the *Kovel* approach, it has been loath to construe the privilege broadly and has viewed what assists an attorney in rendering legal advice narrowly. *See United States v. Rockwell International,* 897 F.2d 1255, 1264 (3d Cir. 1990) (holding and quoting from *Kovel*, "most vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer."); *but see In re G-I Holdings, Inc.*, 218 F.R.D. 428, 435 (D.N.J. 2004) (holding that *Kovel* does not protect all third party communication "necessary to assist the lawyer in rendering legal service to the client," and rejecting "findings of an attorney-client privilege based [solely] on the necessity or value of the provided assistance" but rather adopting a requirement that the third-party be acting as a "translator or interpreter of client communications."). Continuing in that narrow tone, "[t]he privilege does not apply merely because a statement was uttered by or to an attorney (or an attorney's agent). Nor does it attach simply because a statement conveys advice that is legal in nature." *HPD Laboratories*, 202 F.R.D. at 414 (citing *Westinghouse*

4

*Elec. Corp.*, 951 F.2d at 1423-24). Rather, "the privilege extends to '*only* those disclosures-necessary to obtain informed legal advice-which might not have been made absent the privilege.'" *Id.*

Accordingly, the key question in the instant case is whether the communications in question between Salvagno and Weiss were undertaken with the express goal of helping Rinaldo render legal advice to Salvagno. Further, according to Third Circuit precedent, the privilege should be considered narrowly with an eye towards only protecting communications between Weiss and Salvagno that directly facilitated Rinaldo's ability to communicate with and render legal advice to Salvagno. Each instance of objections regarding Salvagno-Weiss conversations by the parties will be dealt with in turn:

>    **1)**    Q:    *"What did Mr. Salvagno tell you that Mr. Weisenbach had done that led you to spend that time with him and prepare a videotape of an incident?"*
> - Weiss Deposition 21:4-15

Initially, the Court notes that the attorney-client privilege does not extend to the facts underlying privileged communications. *Upjohn Co.*, 449 U.S. at 395-96. Further, nothing in the above question indicates that Weiss was acting in a unique manner with the express goal of assisting Rinaldo to render legal advice to Salvagno. Accordingly, the questions asked by Weiss regarding the interactions of Defendant Weisenbach and Salvagno are not privileged.

>    **2)**    Q:    *"Have you ever had a conversation with Mr. Salvagno out of the presence of Mr. Salvagno's attorneys?"*
> - Weiss Dep. 21:16-20

The Court finds that this question is not privileged. The protection afforded the Weiss-Salvagno relationship is not a blanket privilege. The key holding of *Kovel* is that the privilege only applies in instances in which the attorney's agent is seeking information in a manner unique to the third-party in order to assist the attorney in rendering legal advice to the client.

    **3)**    Q:    *"Have you ever discussed with Mr. Salvagno anything that Mr. Weisenbach did or supposedly did to Anthony Salvagno when driving past him?"*
    - Weiss Dep. 22:1-9

           Q:    *"Did you ever have conversations with Mr. Salvagno out of the presence of his attorneys in which Mr. Salvagno discussed actions that Jay Weisenbach purportedly was engaged in while driving past him?"*
    - Weiss Dep. 22:10-23:5

The attorney-client privilege does not extend to the facts underlying privileged communications, therefore these instances of communication between Weiss and Salvagno are not privileged. Considering the narrow nature of the attorney client privilege in the Third Circuit, nothing in these communications reveals that Weiss was acting as a "translator or interpreter of client communications." *In re G-I Holdings, Inc.,* 218 F.R.D. at 435.

    **4)**    Q:    *"Did he ask Anthony whether or not there was more than one time that he was called a space cadet by Mr. Weisenbach?"*
    - Weiss Dep. 110:1-25

Again, the attorney-client privilege does not extend to the facts underlying privileged communications, therefore these instances of communication between Weiss and Salvagno are not privileged.

    **5)**    Q:    *"...first one to punch out every day?"*
    - Weiss Dep. 116:1-7

Again, the attorney-client privilege does not extend to the facts underlying privileged communications, therefore these instances of communication between Weiss and Salvagno are not privileged.

**6)**    Q:    *"Okay. Im going to show you what's been marked as S-9C. (Handing). Did you review this in preparation for your – "This looks familiar" – in preparation for your interviewing witnesses is my question?"*
*"I perused it..."*
*"Did you discuss this particular document with Mr. Salvagno?"*
- Weiss Dep. 121:4-17

     Q:    *"Did Mr. Salvagno tell you that when he wrote these various things down?"*
- Weiss Dep. 121:20-25

The Court is unfamiliar with document S-9C, its contents, or relevance. However, the attorney-client privilege does not extend to the facts underlying privileged communications, therefore these instances of communication between Weiss and Salvagno are not privileged.

**7)**    Q:    *"Did you ever speak to Mr. Salvagno about his efforts to get Borough employees or former Borough employees to give statements on his behalf?"*
- Weiss Dep. 125:22-126:18

The privilege does not apply to this question. Weiss was not acting in his capacity as a investigator or agent in this instance. "The privilege does not apply merely because a statement was uttered by or to an attorney (or an attorney's agent). Nor does it attach simply because a statement conveys advice that is legal in nature." *HPD Laboratories*, 202 F.R.D. at 410 (*citing Westinghouse Elec. Corp.*, 951 F.2d at 1423-24). Rather, "the privilege extends to 'only those disclosures-necessary to obtain informed legal advice-which might not have been made absent the privilege.'" *Id.*

**8)**    Q:    *"Did you discuss Mr. Wagner with Mr. Salvagno prior to taking his statements?"*
- Weiss Dep. 129:13-17

     Q:    *"Did Mr. Salvagno tell you prior to taking this statement that Mr. Wagner was mildly retarded?"*
- Weiss Dep. 129:18-22

     Q:    *"Did Mr. Salvagno tell you that Mr. Wagner was learning disabled?"*
*"Did Mr. Salvagno tell you that Mr. Wagner had a hearing impairment?"*
- Weiss Dep. 129:23-130:5

The Court finds that these areas of conversation between Weiss and Salvagno are not privileged. They are not privileged because nothing in these communications meets the high bar required in the Third Circuit for the extension of the attorney client privilege to third parties.

**9)** Q: *"And you used no other source, other than the statements that you had for the questions that you asked these witnesses?"*
*"Did you use it as a source of, these questions with these statements, information gained through conversations with either Mr. Salvagno or his attorneys?"*
- Weiss Dep. 169:1-15

Nothing in the excerpt provided above convinces the court that Weiss was acting as a translator or interpreter of client communication in a unique or necessary way. Accordingly, the attorney client privilege does not apply to the above communications.

**III.** **Conclusion**

For the reasons stated above, the Defendants' Motion to Compel is GRANTED.[2]

    s/ Michael A. Shipp
**HONORABLE MICHAEL A. SHIPP**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] Counsel are to note that this decision is limited to the specific questions and answers posed at the deposition. To the extent that counsel have any disputes during the continuation of the Weiss deposition, they should meet and confer to attempt to resolve the dispute. If counsel can not resolve the dispute, they should feel free to contact the Court for a question-specific determination.